**ARMCO STEEL CORPORATION, Appellant,**

v.

**Vernon MULLINS et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 9, 1973.

Lowell T. Hughes, Gregory L. Monge, Caldwell, VanAntwerp, Welch & Hughes, Ashland, for appellant.

Hubert Counts, Counts & Duvall, Olive Hill, for appellee Vernon Mullins.

Murvel E. Combs, Robert D. Hawkins, Dept. of Labor, Frankfort, for appellee James Yocom, Com'r of Labor, and Custodian of the Special Fund.

STEINFELD, Justice.

On July 14, 1971, appellee Vernon Mullins filed a claim with the Workmen's Compensation Board seeking temporary total and permanent partial disability benefits. On motion of his employer, the Special Fund was made a party. Mullins was ordered to report for an examination to Dr. Wayne Kotcamp, who then filed his report with the board. Depositions of Drs. John Ashworth and Paul Kleykamp and a report from Dr. Harold H. Kuhn were also filed. On April 24, 1972, the board dismissed the Special Fund and granted Mullins, against appellant Armco Steel Corporation, temporary total disability benefits for 17 weeks and 20% permanent partial disability benefits for an additional 383 weeks. Armco filed a petition for review with the Boyd Circuit Court which affirmed on the basis that substantial evidence sustained the award.

This appeal is from so much of the judgment which allowed permanent partial disability benefits. Armco's sole argument is that Mullins did not sustain an injury of appreciable proportions entitling him to permanent benefits.

On July 15, 1970, Mullins, age 60 years, injured his right knee while in the employment of Armco as a rigger, which involved general repairs, setting machinery, high climbing, and working in the entire mill. Mullins was immediately taken to the plant hospital where he was x-rayed by Dr. Kleykamp. The doctor deposed that the examination revealed an "acute ligamentous sprain of right knee, lateral aspect. Has some swelling of knee and tenderness of lateral aspect." The following day the knee was tapped and the fluid showed no signs of blood or xonthochromic fluid.

On August 21, 1970, Mullins saw Dr. Ashworth, who reviewed the x-rays which were taken at the plant. At this time a cystic mass in the posterior part of the knee joint was discovered. Exercise was prescribed. Mullins returned on September 14, 1970, and it was found "he had a full range of pain-free motion of his right knee and there was no swelling and no instability, though he was still complaining of some pain in the right knee." Dr. Ashworth stated that one month later Mullins cancelled an appointment with him because he said his knee was not giving him any trouble. Mullins returned to work August 24, 1970. A note signed by Dr. Ashworth stated that Mullins could return to work as a welder on a trial basis but that he should not climb. Mullins testified that when he returned to work he could not do the same work, that he could not climb or squat, but despite Dr. Ashworth's note he was not placed on light duty. On September 16, 1970, Dr. Ashworth released him to return to regular work with no restrictions.

On February 16, 1971, Mullins had surgery for the removal of a torn lateral similunar cartilage and a Baker's cyst from the right knee. Sometime in June 1971, he went back to work. From that date until July 21, he worked as a rigger. He was on vacation from July 21 until December 4. He stated he had difficulty in doing his work. His knee "hurts about all the time." He stated it affects his squatting and bending which are necessary in his job. He has continued to work since the accident.

Mr. George Watterson, turn foreman in the rigger shop, testified that after Mullins returned from vacation his work improved.

Dr. Kleykamp deposed that he felt it was not necessary to restrict Mullins after the operation; that Mullins "had had a satisfactory convalescence from his operation." He did not classify him as being disabled.

Dr. Ashworth stated that the condition for which Mullins was operated on was a result of the alleged injury; that Mullins made good progress and had no complications. Mullins told him after the operation and he had returned to work that he did the same type work at the time of the injury and "he was able to do the work without too much difficulty except in squatting." Dr. Ashworth examined Mullins the day the deposition was taken. He said

Mullins had "no real impairment, with the exception that full flexion or bending of the knee caused pain and he stated that he was unable to fully squat and did not squat because of this pain." Dr. Ashworth rated his functional disability as approximately 5% impairment to the body as a whole.

Dr. Kotcamp's examination of February 16, 1972, revealed an old fracture of the outer and superior fragment of the right knee cap which he attributed to the injury. He found a 15% partial permanent disability to the body as a whole. This was the only doctor to find any evidence of a fracture of the right knee cap.

Dr. Kuhn stated that his x-ray examination, conducted on July 19, 1971, revealed no evidence of bone injury; that a Baker's cyst on the right knee had been excised, and there was "injury to lateral cartilage excised with residual laxness of the anterior cruciate ligament as well as the medial collateral ligament." His opinion was that Mullins "has a 10% partial permanent disability broken down on the basis of 5% for the cartilage and 5% for the Baker's cyst."

█ The board based its findings on Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968), which said,

" * * * that in those instances in which the workman has sustained no loss of immediate earning capacity but has incurred a permanent injury of appreciable proportions, the Workman's Compensation Board, under KRS 342.110, can and should make an allowance for some degree of permanent partial disability on the basis of the probability of future impairment of earning capacity as indicated by the nature of the injury, the age of the workman, and other relevant factors."

Appreciable, in this sense, means substantial or of significant consequence. Harry Gordon Scrap Materials, Inc. v. Davis, Ky., 478 S.W.2d 731 (1972).

█ The board is the sole fact finder in compensation proceedings and the circuit court may not substitute its opinion for that of the board on the weight of the evidence. Factual findings by the board, based upon substantial evidence, are conclusive and binding on the court. E. I. Dupont De Nemours & Company v. Burns, Ky., 427 S.W.2d 581 (1968). In Island Creek Coal Company v. Springer, Ky., 479 S.W.2d 890 (1972), it is stated:

"By its very nature, the fact to be proved, i. e., probable ultimate reduction of earning capacity by a shortening of work life or a reduction of employment opportunities through a combination of age and physical impairment * * * is not capable of being proved with exactitude. The Workmen's Compensation Board must therefore be allowed considerable leeway in its factual determination."

See also Nashville Coal Company v. Epley, Ky., 350 S.W.2d 463 (1961).

█ There was substantial evidence to support the implicit factual findings of the board that a reasonable probability of future impairment of earning capacity was present and the injury suffered by Mullins was of appreciable proportions. See Dolt & Dew, Inc. v. Smith, Ky., 493 S.W.2d 711 (1973).

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.